Carr, J.
The first point made for the appellant, was, that her assent to her daughter’s taking administration being *157 in pais, was not such a renunciation of the executorship, as bound her. But it has been expressly decided by this court, in Geddy v. Butler, Nelson v. Carrington, and Burnley v. Duke, that such renunciation may be effectually made by declarations in pais, or may be presumed from circumstances.
It was next insisted, that this renunciation, though it might for the time authorize the grant of administration to the daughter, was no peremptory renunciation, but that on the death of her daughter, the widow still had a right to qualify as executrix. The passage cited from Toller’s Law of ex’ors, 42. certainly supports the proposition ; but that passage itself is not only wholly unsupported, but seems directly in opposition to the books there referred to. Toller says, “ After refusal by the executor and administration granted, the party is incapable of assuming the executorship during the lifetime of such administrator, but after the death of the administrator, he may retract his renunciationand Wentw. Off. Ex’or, Swinburne, and 3 Bac. Abr. are cited in the margin. Now, in Wentw. Off. Ex’or, 38. I find this passage—“ After refusal, and administration committed, the executor cannot go hack, to prove the will, and assume the executorship”—almost the words used by Toller in the first part of the sentence, but unqualified by his assertion that the executor may retract after the death of the administrator. And (p. 41.) Wentworth gives the reason why there can be no such power of retraction : “ It is clear, he says, that if there be but one executor, and he refuse, or being many, if they do all refuse, then is the party dead intestate, and administration is to be committed with the will annexed. JYor can any after meddle as executors.” Certainly, the party could never be said to be dead intestate, if there were a person living who might, under any circumstances, still claim to qualify as executor. So, in Swinburne, part 6. § 12. it is said—“ But after refusal, and administration committed to another, the executor cannot recede from it, and go back to prove the will, and assume the executorship.” *158 And in 3 Bac. Abr. 42. it is said, still more strongly—“ If an executor refuse before the ordinary, to take upon him the executorship, the ordinary may grant administration cum testamento annexo to another person, and he can never afterwards be permitted to prove the will.” In Rolle’s Abr. 907. it is said, “ if all the executors refuse to administer, administration shall be granted, for then the testator is dead intestateand he cites several of the year books. In Graysbrook v. Fox, Plowd. 281. it is said, “ where a man makes his executors, who refuse, the ordinary may commit administration to others, because, 'upon the matter he died intestate.” And in JAensloe's esse, 9 Co. 40. the court lay it down, that “ the reason why the ordinary may, upon the refusal of all the executors, or their death intestate, grant administration, is,' because now the testator dies intestate, and then the statute 31 Ed. 3. gives him power to grant it, which he cannot do, when one refuses, and the other proves.” Upon all these authorities, as well as the clear reason of the case, I am well satisfied, that the passage in Toller is erroneous, and that when an executor has once renounced, and administration has been committed, he can never retract his renunciation.
It was contended, in the last place, that the wife has the best right to administration under our statute; and this, though it be clear (as in the case before us it is) that she has no interest in the residuum; nothing to do with the personalty beyond the provision made for her by the will. But this is a question concluded, as I conceive, by our own decisions, and these decisions founded on the law and reason of the case. In Cutchin v. Wilkinson, Hendren v. Colgin, and Bray v. Dudgeon (cited at the bar), this court has decided, that the person entitled to the estate, is entitled to the administration, and, in the last case, this was so adjudged against a husband seeking administration on his wife’s estate,—a case in point. I am of opinion, on the whole, that the sentence must be affirmed.
*159 Cabell, J. I am also of opinion, that the sentence should be affirmed.
Tucker, P. The attempt to sustain the claim of the appellant, in this case, to the administration of the estate of her husband, rests upon three grounds—1. that she was the executrix named in the will, and has never refused the executorship ; 2. that if her verbal declaration could be considered a refusal, she had a right to retract it after the death of the first administratrix; and 3. that if that be not so, she had as widow the preferable right to the administration.
As to the first proposition, it rests upon the assumption that a verbal declaration in pais does not amount to a refusal, but that a valid renunciation can only be by act done before the court of probat. Whatever may have been the former doctrines of the ecclesiastical courts, it seems to have been admitted in the case of Broker v. Charter, Cro. Eliz. 92. that a letter written by the executors declaring their inability to attend to the duties of executor, was held a valid renunciation; and upon that occasion, Dr. Ford declared before the justices, that by the civil law, a renouncing may be by a matter in fact as well as by judicial act, and that a refusal might even be by parol. This case seems to have been not only unquestioned, but it is also set forth by the various elementary writers as containing the law of the subject. In our courts too, it has been repeatedly adjudged, that the renunciation of an executorship may be by act in pais ; and, in like manner, our statute makes the refusal or failure of all the executors to give security, equivalent to a refusal of the executorship. In the present case, it appears that when Frances Thornton, the first person who administered on the estate, was appointed, Mrs. Thornton declared her agreement that Frances should qualify, but at the same time reserved her right to qualify after her death. Now this agreement by an executor, that another shall qualify as administrator, amounts of course to a refusal of the executorship j because the executor thereby consents, that his *160 testator shall be considered as having died technically intestate, ^hat is without executor. It is a consent that the interest in the estate, which the testator had cast upon him, should be withdrawn from him and cast upon another, and of course inevitably implies a renunciation of that interest himself. Here, it is true, the widow reserved her right to qualify after Frances Thornton's death; and this leads to the
• 2nd Inquiry; whether she had a right to retract her renunciation after Frances Thornton's death? This rests upon a mere question of law: for the reservation of her subsequent right to qualify, can only have effect if it should appear she had such subsequent right. The passages which have been cited from Toller's treatise, go fully to the point, that if an executor renounces, and an administrator is appointed, though the executor cannot retract in his lifetime, •he may after his death, however formally the renunciation may have been made. Upon examination, however, this particular proposition seems wholly unfounded in authority. The editor of the new edition of the Office of Executors, seems to have considered it as sustained by Bacon's abridgement and by Swinburne, part 6. § 12. but in neither of those is-there the slightest intimation of any such opinion. -The case of Broker v. Charter moreover ccmtains the declaration of Dr. Ford, very explicitly, that the renunciation of the executor cannot be partial, or only for a time, but is absolute and perpetual; and though the case itself is not in point here, since in that case the administrator was yet living when the act occurred retracting the renunciation, yet this declaration of a doctor of the civil law (who was, I presume, of the prerogative court) cannot be of less authority than the unsupported dictum of Toller. The proposition, indeed, seems ■ at variance with fundamental principles. By the common law, he who made a will without naming an executor, was technically considered as dying intestate; and if an executor was appointed, and he refused, the testator was then considered intestate. By the common law, also, the appointment of an executor gave him a right to the residuum *161 after the payment of debts and legacies, unless that right was expressly or impliedly excluded by the will. On the other hand, where the decedent died intestate, the ordinary, in early times, took the one-third of the estate’*» pios usus; and then, when administrators came to be appointed, they were at first deemed to be entitled to the residuum after payment of debts; and, afterwards, were compelled to make distribution. Hence it is obvious, that the residuum went, in right of property, to the executor, if he qualified; but if he did not, it went to the administrator in his own right, or as fiduciary. The effect, then, of a renunciation by the executor, was to part with this right of property; to consent that his testator should be deemed to have died inteS’ tate as to it, and to agree that it should pass into the hands of such person as the ordinary should make administrator, for the benefit of those by law entitled. This is of the nature of a transfer of a right or title in personal property; and hence it may be truly said, in the language of Dr. Ford, that, after the renunciation, the executor shall never retract, quia transit in contractum. The right of property has passed, and cannot be arbitrarily reclaimed: the testator has been admitted to be intestate, and the rights which thereby vested cannot be revoked and annulled by again considering him testate. The affairs of estates would be eternally unsettled, if such irregularities were permitted; and though it is true the executor is not now entitled to the residuum, and that the principles out of which the rule has grown, have been in part repudiated by our law, yet the practice to which they gave rise must still be adhered to. I am, therefore, of opinion, that after a refusal by an executor, and the appointment of an administrator, there is no right on the part of the executor to retract his refusal upon the death of the administrator.
Then, 3rdly, upon the death of Frances Thornton, when it became necessary to appoint an administrator de bonis non, had Mrs. Thornton a preferable right to the appointment? Admitting, that, in the appointment of an adminis *162 trator de lonis non, the same preferences are to be observed as m {ke original grant of administration, and admitting that Mrs. Thornton’s permission to Frances Thornton to administer, was no waiver of her preferable right, still that right would or would not exist, according as she had or had not an interest in the testator’s estate. For, notwithstanding the strong language of the statute, it cannot at this day be contested, that the right of administration mainly follows the title to the personal estate. This has been repeatedly decided in Virginia; and it is the settled law of England, Toll. 116. So far, indeed, is the doctrine carried, which gives the administration to the person entitled to the property, that although the statute directs the husband or wife to be preferred, yet their claims will yield when the estate is to go to other persons; as, where by settlement upon the death of the feme, her property is to pass to her representatives to the exclusion of her husband, her relations shall have the administration in preference to the husband or his representatives; Toll. 85. 116. Bray v. Dudgeon, 6 Munf. 132. Now, in this case, I take it the widow is entitled to no portion of the residuum. She has had an ample provision made for her by her husband’s will; and if not, yet she has not renounced the will: and the law emphatically declares, as to the personalty, that if she does not declare her refusal of the provision made for her by the will, within a limited time, she shall have no more of her husband’s slaves and personal estate than is given her by his will. It is not correct to suppose, that such provision must be declared, or averred to be, in lieu of her distributable share: there is no such language in this statute. In the statute concerning dower, indeed, it is made necessary to bar dower, that the estate conveyed must be, expressly or by averment, in lieu of the dower of the wife; but that provision is confined to the real estate, and to that alone do all the cases refer, in which it has been held, that a wife may take the provision made for her by her husband’s will, and her dower also.
Sentence affirmed.